Wissert v Medline Indus. Inc. (2026 NY Slip Op 01101)

Wissert v Medline Indus. Inc.

2026 NY Slip Op 01101

Decided on February 26, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 26, 2026

CV-24-1635
[*1]Lisa S. Wissert, as Administrator of the Estate of William R. Wissert, Deceased, Appellant-Respondent,
vMedline Industries Inc., Defendant and Third-Party Plaintiff-Respondent-Appellant; Pengate Handling Systems of New York, Inc., Third-Party Defendant-Respondent.

Calendar Date:January 14, 2026

Before:Reynolds Fitzgerald, J.P., Ceresia, Fisher, McShan and Mackey, JJ.

Whiteman Osterman & Hanna LLP, Albany (Christopher M. McDonald of counsel), for appellant-respondent.
Trevett Cristo, Rochester (Melanie S. Wolk of counsel), for defendant and third-party plaintiff-respondent-appellant.
Wilson Elser Moskowitz Edelman & Dicker LLP, New York City (Joseph Laird of counsel), for third-party defendant-respondent.

Mackey, J.
Cross-appeals from an order of the Supreme Court (Martin Auffredou, J.), entered September 23, 2024 in Warren County, which (1) denied plaintiff's motion for partial summary judgment, (2) partially granted defendant's cross-motion for, among other things, summary judgment dismissing plaintiff's complaint, and (3) granted summary judgment dismissing the third-party complaint.
William R. Wissert (hereinafter decedent) was a technician working for third-party defendant Pengate Handling Systems of New York, Inc. (hereinafter Pengate) when he suffered fatal injuries. On the date in question, he went to a facility owned by defendant to service an order picker (hereinafter the picker) — this particular machine, which is similar to a forklift, was fitted with a platform upon which a person can stand that can be hydraulically raised and lowered. Decedent proceeded to examine and disassemble the picker, at which time the picker's raised platform fell upon decedent, causing his death.
Plaintiff, in her capacity as the administrator of decedent's estate, commenced this action against defendant for claims arising under Labor Law §§ 200, 240 (1), 241 (6), common-law negligence and wrongful death. Defendant in turn filed a third-party action against Pengate for indemnification and contribution. Plaintiff thereafter moved for partial summary judgment on the Labor Law § 240 (1) claim, arguing that the lack of a safety device — namely, a "safety stand" — constituted a violation of the Labor Law and thus entitled her to summary judgment on that claim.[FN1] Defendant opposed plaintiff's motion, cross-moved for summary judgment dismissing all of plaintiff's claims and further argued that it was entitled to common-law indemnification from Pengate. Pengate supported defendant's cross-motion for summary judgment against plaintiff, but opposed defendant's motion as to Pengate. Supreme Court ultimately found that defendant had demonstrated that decedent was not engaged in work at the time of the accident and that plaintiff failed to raise an issue of fact in this regard. Accordingly, the court denied plaintiff's motion and granted defendant's cross-motion, dismissing plaintiff's complaint. In light of this, the court found defendant's motion as to Pengate to be "academic" and dismissed the third-party complaint. These cross-appeals by plaintiff and defendant ensued.
Plaintiff primarily contends that Supreme Court erred in denying her motion for summary judgment as to her Labor Law § 240 (1) cause of action, and defendant in turn argues that it was properly awarded summary judgment on that issue. We reverse the award of summary judgment, as we find several questions of fact preclude such an award on plaintiff's Labor Law § 240 (1) claim in favor of either party (see Nusbaum v 1455 Wash. Ave., LLC., 240 AD3d 1113, 1114 [3d Dept 2025]). "Labor Law § 240 (1)'s list of required safety devices (e.g., 'scaffolding,' 'hoists,' 'braces,' 'irons' and 'stays') . . . evinces a clear legislative [*2]intent to provide exceptional protection for workers against the special hazards that arise . . . [from] such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured" (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 500-501 [1993] [internal quotation marks and citations omitted]), and it is well settled that this protective provision "is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed" (Rocovich v Consolidated Edison Co., 78 NY2d 509, 513 [1991] [internal quotation marks and citations omitted]). Relevant here, the provision "requires that contractors, owners and their agents provide elevation-related safety devices that are so constructed, placed and operated as to give proper protection to any laborer engaged in the . . . repairing . . . of a building or structure, and a failure to do so results in liability for any injuries proximately caused thereby" (Breslin v Access Auto Sales & Serv., LLC, 239 AD3d 1119, 1120 [3d Dept 2025] [internal quotation marks and citation omitted]).[FN2]
"Repairing is distinguished from the uncovered activity of routine maintenance, which involves replacing components that require replacement in the course of normal wear and tear" (Alexander v Hart, 64 AD3d 940, 943 [3d Dept 2009] [internal quotation marks and citation omitted]; see Markou v Sano-Rubin Constr. Co., Inc., 182 AD3d 674, 675-676 [3d Dept 2020]), whereas work that is occasioned by an "isolated and unexpected event" constitutes repair work under the protection of Labor Law § 240 (1) (Eherts v Shoprite Supermarkets, Inc., 199 AD3d 1270, 1272 [3d Dept 2021]; see Pakenham v Westmere Realty, LLC, 58 AD3d 986, 987 [3d Dept 2009]). Liability is nevertheless precluded where a worker "(1) had adequate safety devices available, (2) knew both that the safety devices were available and that they were expected to use them, (3) chose for no good reason not to do so, and (4) would not have been injured had they not made that choice" (Biaca-Neto v Boston Rd. II Hous. Dev. Fund Corp., 34 NY3d 1166, 1167-1168 [2020] [internal quotation marks, brackets and citation omitted]; accord Burgos v Darden Rests., Inc., 234 AD3d 1037, 1039 [3d Dept 2025]).
Even assuming that defendant and plaintiff met their respective prima facie burdens on summary judgment, we conclude that each successfully raised issues of fact precluding summary judgment in favor of either party as to the Labor Law § 240 (1) claim. In support of her motion, plaintiff submitted the deposition testimony of Michael Hill, a technician employed by Pengate and decedent's coworker at the time of the accident. Hill testified that, after being informed that the picker in question needed work, he examined it prior to the day of the accident and identified the problem to be a leaking lift cylinder. That problem required repacking of the hydraulics, which involved raising and [*3]securing the picker's platform, removing the cylinder and then installing new seals. According to Hill, this is a two-to-five-hour job and, unlike replacing a filter on a hydraulic system, which would be considered scheduled maintenance, was outside the scope of scheduled maintenance and required a separate work order.[FN3] Hill testified that, on the day of the accident, he and decedent moved the picker to the loading dock and raised the platform "to begin the repair process," albeit without securing the platform's elevated position. Shortly thereafter, however, Hill testified that decedent determined that the parts kit provided to them was incorrect, such that they could not proceed. Hill explained that decedent nevertheless said to him, "Let me just take a look at it, and let me just get this snap ring off," before decedent walked over to the picker. Hill stated that removal of the snap ring is part of the repacking procedure and that he then observed decedent trying to remove the snap ring with a pair of snap ring pliers. Thereafter, while Hill briefly returned to his work van to retrieve a manual, the picker's platform fell upon decedent. Hill testified that he had previously worked with decedent on repacking hydraulics and that, at that time, they had chained the platform of the picker to a mast with a chain that decedent had brought with him.
Plaintiff also relied upon the affidavit of Edward Zemeck, a professional engineer. Therein Zemeck opined that the hydraulic system work to be performed by decedent constituted a repair and not routine maintenance, as it stemmed from an isolated event. Zemeck further averred that the appropriate safety device to be employed was a safety stand, which did not appear to have been provided or made known to decedent despite such device being required pursuant to the picker's maintenance manual. To the extent that decedent had apparently previously used a chain to secure the platform, Zemeck explained that such was not an appropriate safety device as it could not have served its intended purpose because there was no place to properly rig the chain to prevent the platform from falling. The picker's maintenance manual supports Zemeck's opinion, warning that "[w]hen it is necessary to perform a procedure with the operator's platform elevated, place a safety stand between the carriage and baseleg."[FN4]
Defendant in turn submitted its scheduled maintenance agreement with Pengate, emphasizing that hydraulic leaks are expressly listed. We note, however, that although the agreement is identified as one for "maintenance" and notes that work should be "carried out once every service interval," it also provides that "[r]epairs will be carried out at current rates for labor, parts and expenses." In support of defendant's motion, Pengate also submitted the expert affidavit of Joseph Danatzko, a professional engineer. Danatzko opined that Labor Law § 240 (1) was not violated here because decedent was not performing a repair at [*4]the time of the incident and, further, that a chain was an appropriate safety device that could have prevented the accident and was readily available.
Upon this record, we find that ample evidence was presented to raise triable issues of fact as to whether decedent's work activities fell within the protections afforded by Labor Law § 240 (1). Indeed, "delineating between routine maintenance and repairs is frequently a close, fact-driven issue" (Pakenham v Westmere Realty, LLC, 58 AD3d at 987). We similarly find that issues of fact were raised as to whether appropriate safety devices were provided to decedent and whether he had engaged in any conduct precluding liability (see generally Biaca-Neto v Boston Rd. II Hous. Dev. Fund Corp., 34 NY3d at 1167-1168). Nor is Supreme Court's finding that decedent was not engaged in "work" at the time of the accident supported by the record. Rather, Hill's testimony that decedent was seen attempting to remove a snap ring, which is part of the repacking procedure, mere seconds before the accident, raises a question of fact in that regard. Accordingly, summary judgment as to plaintiff's Labor Law § 240 (1) cause of action should have been denied (see Breslin v Access Auto Sales & Serv., LLC, 239 AD3d at 1122; Burgos v Darden Rests., Inc., 234 AD3d at 1039-1040; Hawver v Steele, 204 AD3d 1125, 1129 [3d Dept 2022]; Pakenham v Westmere Realty, LLC, 58 AD3d at 988; see also Alexander v Hart, 64 AD3d at 943).
We agree with plaintiff that, as the dismissal of her wrongful death claim was predicated solely upon Supreme Court's finding of no liability under her Labor Law § 240 (1) cause of action, it should be reinstated. In light of this, that part of Supreme Court's order dismissing the third-party complaint as academic must also be reversed.
Reynolds Fitzgerald, J.P., Ceresia, Fisher and McShan, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as dismissed plaintiff's Labor Law § 240 (1) and wrongful death claims and defendant's third-party complaint, and, as so modified, affirmed.

Footnotes

Footnote 1: The maintenance manual for the picker provides that "[w]hen it is necessary to perform a procedure with the operator's platform elevated," a safety stand (i.e., a long metal pole) should be placed "between the carriage and baseleg" to prevent the platform from dropping.

Footnote 2: On appeal, defendant and Pengate do not argue that the fall of the picker's platform upon decedent is, in and of itself, an accident outside the protection of Labor Law § 240 (1). We find that the fall of the platform at issue here is precisely the type of gravity-related accident covered under the statute (see Jiron v China Buddhist Assn., 266 AD2d 347, 349 [2d Dept 1999]).

Footnote 3: The "Scheduled Maintenance Agreement" between defendant and Pengate appears to confirm Hill's testimony, as repacking hydraulics is not listed as a service provided routinely, on a scheduled basis. Rather, repacking the hydraulics would ostensibly come under that part of the agreement addressing "additional repairs."

Footnote 4: The maintenance manual provides that a chain may instead be used to "stabilize the mast," a situation not at issue in this case.